IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

| | |
|---|---|
| **NORMAN DEANDRE ADAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | No. 1:19-cv-1121-STA-dkv |
| ) | |
| **OBION COUNTY, TENNESSEE;** ) | |
| **GARY "JIP" LOFTON,** ) | |
| **MIKE RICHARDS, and** ) | |
| **BENNY McGUIRE in their Official and** ) | |
| **Individual capacities; AND JOHN DOE,** ) | |
| ) | |
| **Defendants.** ) | |

---

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT MIKE RICHARDS' MOTION TO DISMISS**
**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

---

This is a civil action for race discrimination filed by Obion County employee Norman Deandre Adams against the County and several county officials. Before the Court is a Motion to Dismiss (ECF No. 36) filed by one those officials Defendant Mike Richards. Defendants Obion County, Gary "Jip" Lofton, and Benny McGuire have filed a separate Motion for Judgment on the Pleadings (ECF No. 38). Adams has responded in opposition to both Motions. For the reasons set forth below, each Motion is **GRANTED in part and DENIED in part**.

**BACKGROUND**

**I.   Factual Background**

Adams filed his initial Complaint on June 10, 2019, and then amended his pleadings on

1

October 18, 2019.  For purposes of deciding Defendants' Rule 12 Motions, the Court accepts the following well-pleaded factual allegations of the Amended Complaint (ECF No. 26) as true. Obion County, Tennessee has employed Adams, an African-American male, in its highway department since March 28, 2011.  (Am. Compl. ¶ 15.)  During his tenure, Adams has endured a number of episodes where supervisors and co-workers have made racially charged comments and used racial epithets in conversation with him.  (*Id.* ¶ 16.)  These episodes came to a head in June 2018, when Adams opened a drawer in his workspace and discovered a document with the title "N****r Owner's Manual" and containing instructions for the owner of a "N****r."  (*Id.* ¶ 17.)[1]  Adams brought the document to Defendant Gary "Jip" Lofton, the superintendent of the county highway department, and told Lofton where he had found it.  (*Id.* ¶ 18.)  Lofton took the document and looked it over before telling Adams not to say anything to anyone else in the department and vowing to "get to the bottom of it."  (*Id.* ¶ 19.)  As Lofton went to throw the document away, Adams asked to have it back.  (*Id.* ¶ 22.)  Adams had reported other racial comments and episodes to Lofton in the past, and Lofton had never taken any disciplinary action in response to Adams' previous reports.  (*Id.* ¶ 20.)  Based on that history, Adams did not believe that Lofton would do anything about the document.  (*Id.* ¶¶ 20, 21.)

After Adams had spoken to Lofton and kept the document in his possession, Adams' brother posted pictures of the document online, and the post went viral, gaining local and national media attention.  (*Id.* ¶ 24.)  Sometime after that Lofton approached Adams and asked for him to return the document to him or turn it over to the county attorney.  (*Id.* ¶ 25.)  Rather

---

[1] The Amended Complaint uses asterisks within quotation marks and does not spell out the full racial epithet.  Adams attached a copy of the actual document as Exhibit A to his initial Complaint (ECF No. 1-6).  The document itself uses the full term without quotation marks or asterisks.

than deliver the document to Lofton or the county attorney, Adams gave the document to his personal attorney for safekeeping. (*Id.* ¶ 26.)  This prompted County Mayor Benny McGuire to ask Sheriff Jerry Vastbinder to arrest Adams for theft of county property, a request the sheriff declined. (*Id.* ¶¶ 27, 28.)  Sheriff Vastbinder is not a party to this action.  According to the Amended Complaint, Mayor McGuire threatened another county employee who had spoken out in support of Adams that the employee would regret posting anything else online about the matter. (*Id.* ¶ 30.)

Adams alleges that following the incident over the document, he experienced retaliation. Even though Adams worked in a purchasing position, he was directed to perform custodial duties like trimming weeds on county property and running a pug mill used to mix asphalt and aggregate for paving roads. (*Id*. ¶¶ 32–34.)  It was also during this time that Defendant Mike Richards, the county highway department's general foreman, intimidated other employees of the department about cooperating with Adams, warning the employees that Adams "might get a little money" but that afterwards management "would still be here" and the employees "will still be answering to" them. (*Id.* ¶ 35.)

From these factual premises, Adams alleges a series of discrimination claims.  The Amended Complaint seeks redress against Obion County for race discrimination and retaliation, both in violation of Title VII of the Civil Rights Act of 1964, as well as race discrimination, harassment, hostile work environment, and retaliation in violation of the Tennessee Human Rights Act.  Adams alleges against all Defendants, including Mike Richards, a Fourteenth Amendment equal protection claim in violation of 42 U.S.C. § 1983; and race discrimination and retaliation claims based on violations of 42 U.S.C. § 1981.  Finally, Adams alleges claims for the intentional infliction of emotional distress against Mayor McGuire and the John Doe who placed

the offensive document in Adams' workspace. Adams seeks both economic and non-economic damages, punitive damages, and an award of attorney's fees and costs.

## II. Defendants Mike Richards' Motion to Dismiss

In his Motion to Dismiss, Defendant Mike Richards seeks the dismissal of the § 1983 equal protection claims against him. Richards argues that the one-year statute of limitations bars the Amended Complaint's § 1983 claims. Adams has included allegations about Richards' conduct far outside the limitations period, going back as far as 2011 or 2012. To the extent that the Court declines to dismiss the claims, Richards argues that the Court should at least dismiss any claim against Richards in his official capacity. A cause of action against a county employee in his official capacity is just a claim against the county itself. Therefore, the Court should dismiss some or all of the § 1983 claims against Richards under Federal Rule of Civil Procedure 12(b)(6).

Adams has filed a response in opposition to Richards' Motion. Adams first argues that the Court should deny the Rule 12(b)(6) Motion as untimely. Richards had already filed an answer to the Amended Complaint when he filed the Motion to Dismiss. As a result, Richards cannot now argue that the Amended Complaint fails to state a claim upon which the Court can grant relief. As for the merits of the Motion, Adams argues that his discrimination claims against Richards are timely because at least one of Richards' alleged acts occurred in the limitations period. Adams contends that the continuing violation doctrine applies to bring all of Richards' discriminatory conduct over Adams' full tenure with the county within the scope of the suit. As such, the Court should deny the Motion to Dismiss.

### III. Obion County, Gary "Jip" Lofton, and Benny McGuire's Motion for Judgment on the Pleadings

In their separate Motion for Judgment on the Pleadings, Obion County, Gary "Jip" Lofton, and Benny McGuire seek the partial dismissal of the claims in the Amended Complaint. Like Richards, Defendants argue that any claim against county officials in their official capacity is actually a claim against Obion County itself. So, the Court should dismiss the official capacity claims. Defendants next argue that the Amended Complaint fails to state a claim for punitive damages against Obion County. A plaintiff cannot recover punitive damages from a municipal government like a county. Defendants also seek the dismissal of Adams' claims against the John Doe Defendant because any claim against this fictitious party is now time barred. Finally, just as Richards argues that Adams' § 1983 claims are untimely, Defendants argue that any claim against them that accrued prior to June 10, 2018, is untimely under the one-year statute of limitations for § 1983 claims. Therefore, the Court should grant Defendants judgment on the pleadings as to each of these issues under Federal Rule of Civil Procedure 12(c).

Adams has filed a response in opposition to the Rule 12(c) Motion. Adams first concedes his official capacity claims, his claim for punitive damages against Obion County, and his claim against the John Doe Defendant. Adams opposes the dismissal of his claims for hostile work environment and harassment. While Adam admits that the one-year statute of limitations precludes any claim for a discrete act of discrimination accruing before June 2018, Adams reiterates his argument that the continuing violation doctrine applies and makes any acts occurring before June 2018 relevant to his claim for hostile work environment. Adams argues that his hostile work environment and harassment claims are timely.

## STANDARD OF REVIEW

Before deciding the correct standard of review, the Court considers Adams' position that Richards' Motion to Dismiss is untimely. Federal Rule of Civil Procedure 12(b) requires a party

raising the defense of failure to state a claim on which relief can be granted to do so by motion before filing a responsive pleading. Fed. R. Civ. P. 12(b). Richards filed an answer (ECF No. 30) denying the allegations of the Amended Complaint on November 6, 2019, and his Rule 12(b)(6) Motion (ECF No. 36) on January 29, 2020. It follows that Richards filed his Rule 12(b)(6) Motion out of time. Nevertheless, Rule 12(c) allows a party to seek judgment on the pleadings at any time after the pleadings close, as they have in this case, so long as the motion is made "early enough not to delay trial." Fed. R. Civ. P. 12(c); *see also* Fed. R. Civ. P. 12(h)(2) (permitting a party to raise the defense of failure to state a claim in a Rule 12(c) motion). As a general proposition, "[i]f a litigant misbrands a motion, but could get relief under a different label, a court will often make the requisite change." *Mata v. Lynch*, 135 S. Ct. 2150, 2156 (2015). Consistent with this practice, courts commonly construe a late-filed Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings. *Satkowiak v. Bay Cnty. Sheriff's Dept.*, 47 F. App'x 376, 377 n.1 (6th Cir. 2002) ("[T]he sheriff's department's motion to dismiss under Rule 12(b)(6) should be labeled as a Rule 12(c) motion for judgment on the pleadings since the Sheriff's Department had already filed an answer to the complaint."); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004). Under the circumstances, the Court will consider Richards' Rule 12 Motion as a request for judgment on the pleadings and apply the same standard of review to both Motions for Rule 12 relief.

Pursuant to Federal Rule of Civil Procedure 12(c), motions for judgment on the pleadings may be granted where the moving party "is entitled to judgment as a matter of law." *Cincinnati Ins. Co. v. Beazer Homes Invs., LLC*, 594 F.3d 441, 444 (6th Cir. 2010). Just as with Rule 12(b)(6) motions, the Court must consider a Rule 12(c) motion by accepting all the "well-

6

pleaded material allegations of the pleadings of the opposing party" as true. *Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 912 (6th Cir. 2014). A pleading's factual allegations must be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, i.e., more than merely possible. *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). However, "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 713 (6th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, although the factual allegations in a pleading need not be detailed, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## ANALYSIS

Defendants seek judgment on the pleadings as to some but not all of the claims in the Amended Complaint. The Amended Complaint alleges the following causes of action: (1) race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 against Obion County (Counts I and II); (2) race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 against all Defendants (Count III); (3) race discrimination and retaliation in violation of 42 U.S.C. § 1981 against all Defendants (Counts IV and V); (4) a *Monell* liability claim against Obion County for the violation of Adams' civil rights under 42 U.S.C. § 1983 (Count VI); race discrimination, harassment and hostile work

environment, and retaliation in violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4–21–101 et seq. against Obion County (Counts VII and VIII); and the intentional infliction of emotional distress against Mayor McGuire and the John Doe Defendant (Counts IX and X).

As an initial matter, Adams has conceded some causes of action in his briefing on Defendants' Rule 12 Motions: his claims against Richards, Lofton, and McGuire in their official capacities; his claim for punitive damages against Obion County; and his claim against the John Doe Defendant.  The Sixth Circuit has remarked that "the plaintiff remains the master of its complaint" and that, if the plaintiff "concedes that it is not bringing a claim," then the district court "should take it at its word."  *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007). Based on Adams' concessions regarding these claims and for the reasons stated in Defendants' opening memoranda, the Court holds that Defendants are entitled to judgment as a matter of law on each issue.  Therefore, Defendants' Motions are **GRANTED** as to the official capacity claims against Richards, Lofton, and Mayor McGuire; his punitive damages claim against Obion County; and his claim against the John Doe Defendant.

The main issue of contention at the pleadings stage is whether Adams' claims against Defendants are facially time-barred.  A statute of limitations is an affirmative defense under Federal Rule of Civil Procedure 8(c), and so it is typically inappropriate to dismiss a claim as untimely on a Rule 12 motion.  *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). But when the allegations on the face of the complaint show that the claim is time barred, judgment as a matter of law under Rule 12 is proper.  *Jones v. Bock*, 549 U.S. 199, 215 (2007). Although the Amended Complaint names multiple Defendants and contains several causes of

8

action, Defendants' separate Motions make specific arguments about the timeliness only of Adams' § 1983 claims.[2]

### I.     42 U.S.C. § 1983

Adams would hold each Defendant liable under 42 U.S.C. § 1983 for the violation of his Fourteenth Amendment equal protection rights.  Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."  42 U.S.C. § 1983.  Section 1983 does not actually confer any rights but simply creates a "species of tort liability" for the violation of rights guaranteed in the Constitution itself.  *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)).  Under § 1983, the Court's "threshold inquiry" is "to identify the specific constitutional right" at issue and then apply the relevant elements and rules of an action to vindicate the right. *Manuel*, 137 S. Ct. at 916 (quotation omitted).

The constitutional right at stake here is the equal protection of the laws guaranteed by the Equal Protection Clause of the Fourteenth Amendment.  U.S. Const. am. XIV § 1 ("No state shall . . . deny to any person within its jurisdiction the equal protection of the laws.").  The Equal Protection Clause protects a public employee from discrimination on account of his race in the terms and conditions of his employment.  *Roschival v. Hurley Med. Ctr.*, 695 F. App'x 923, 927 (6th Cir. 2017).  The statute of limitations on a public employee's claim for the violation of his equal protection rights under § 1983 is one year in Tennessee.  *Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir. 2018) (citing Tenn. Code Ann. § 28–3–104(a), and *Roberson v. Tenn.*, 399

---

[2] Obion County briefly mentions the 300-day administrative filing deadline for charges under Title VII.  The Court considers that issue below.

F.3d 792, 794 (6th Cir. 2005)).  In this case Adams filed his initial Complaint on June 10, 2019, meaning only acts of discrimination occurring within one year of that date are timely for purposes of § 1983.

Before the Court can assess the timeliness of Adams' equal protection claim, the Court must first consider the nature of Adams' claim.  As a general proposition, the same tests for race discrimination claims under Title VII apply to § 1983 equal protection claims.  *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019) (citing *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 917–18 (6th Cir. 2014)).  In the Title VII context, "a victim of discrimination can allege one of two types of actions: (1) discrete discriminatory acts, and (2) claims alleging a hostile work environment." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993–94 (6th Cir. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (internal quotation marks omitted)).  There is some dispute between the parties over whether the Amended Complaint alleges discrete acts of discrimination or a hostile work environment based on a pattern of racial harassment over a period of time.  Count III of the Amended Complaint alleges "race discrimination" against all Defendants.  Defendants' Rule 12 Motions seek the dismissal of any claim for a discrete act of discrimination occurring before June 2018.  But Adams responds that his race discrimination claim includes not just claims for discrete acts of discrimination but also hostile work environment and retaliation.  *See* Pl.'s Resp. in Opp'n 2 (ECF No. 43).

The dispute matters because each type of discrimination claim has its own rules about when the claim accrues and the statute of limitations clock begins to run.  Discrete acts of disparate treatment are "easy to identify" and include "termination, failure to promote, denial of transfer, or refusal to hire." *Hunter*, 565 F.3d at 994 (citing *Morgan*, 536 U.S. at 113).  For purposes of the statute of limitations, each discrete act "starts a new clock for filing charges" based on the act

10

of disparate treatment.  *Wu v. Tyson Foods, Inc.*, 189 F. App'x 375, 378 (6th Cir. 2006) (citing *Morgan*, 536 U.S. at 113–14).  Defendants read the Amended Complaint to allege a number of discrete acts of discrimination, each triggering § 1983's one-year statute of limitations.  For example, according to Richards, Adams knew or should have known as far back as 2013 that his equal protection rights were being violated.  Richards contends then that any discrimination claim Adams had against him based on these events accrued no later than 2013.  As such, by the time Adams filed suit in 2019, the statute of limitations on his § 1983 equal protection claim had run out years before.

Defendants' point is true, as far as it goes.  The one-year statute of limitations would bar any § 1983 equal protection claim based on a discrete act of discrimination accruing before June 2018.  The problem is the Amended Complaint does not actually state such a claim.  Adams alleges the following separate incidents: an unnamed co-worker using a racial epithet when Adams addressed the other person as "sir;" Richards commenting to a subordinate county employee that the employee's job performance was good, except for the fact that the employee talked to Adams; Richards displaying a noose and asking Adams if the noose was "part of his heritage;" Lofton remarking that Adams did not need gloves when cleaning up oil because the oil "won't show up on your hands;" Lofton commenting that Adams blended in with dark lids on a garbage dumpster; Richards making a reference to Adams' "African side;" and Richards' disparaging statement about the Black Lives Matter movement:  "What should be done is bring in a semi to the 'hood,' tell everybody there's free stuff in it, then swing open the doors and open fire."  Am. Compl. ¶ 16(i).  The Amended Complaint provides little or no temporal context to show when these events happened, the kinds of facts that would show from the face of the

11

pleadings that the claims are time-barred.³  Nevertheless, taken one-by-one, none of these allegations constitutes a discrete act of discrimination, like termination or demotion. None would have triggered § 1983's one-year statute of limitations. Adams concedes as much in his briefing on Defendants' Rule 12 Motions. To the extent then that Defendants seek the dismissal of any cause of action for a discrete act of discrimination that occurred before June 2018, the Motions must be **GRANTED**.

Taking the allegations as a whole, however, and viewing the pleadings in a light most favorable to Adams, the acts suggest a pattern of harassment based on Adams' race and consistent with a hostile work environment theory of discrimination. A hostile work environment "involves repeated conduct" and requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hunter*, 565 F.3d at 994 (citing *Morgan*, 536 U.S. at 115–16). The Sixth Circuit has recognized a § 1983 equal protection claim for hostile work environment. *Boxill*, 935 F.3d at 520 (citing *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013)).⁴ Adams argues in his

---

³ Of these incidents only the allegation about Richards' comment to the other county employee and his relationship with Adams and the noose episode are given any temporal context. The Amended Complaint states that the comment to the other employee was made after Adams had worked for the county about a year and the noose incident about two years into Adams' tenure. Based on the allegation that Adams started with Obion County in 2011, the reasonable inference from the pleadings is that these two events occurred sometime in 2012 or 2013.

⁴ The elements of an equal protection claim for hostile work environment under § 1983 mirror those of a hostile work environment claim under Title VII: (1) the employee belongs to a protected group, (2) he was subject to unwelcome harassment, (3) the harassment was based on his protected status, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act." *Boxill*, 935 F.3d at 520; *see*

response briefs that he would hold Defendants liable under § 1983 for creating a hostile work environment and that his hostile work environment claim is timely because it was a continuing violation and at least one act occurred in the limitations period.  The Amended Complaint alleges that Richards, and to a lesser extent Lofton, subjected Adams to a series of racialized comments and conduct over a period of time.  Based on this construction of the pleadings, the Court holds that the Amended Complaint states a § 1983 equal protection claim based on a hostile work environment theory.

The fact that at least one act making up the pattern of harassment occurred within the one-year limitations period satisfies the statute of limitations for Adams' § 1983 equal protection claim.  The Sixth Circuit has held in the context of Title VII that a hostile work environment claim is timely as long as it is filed within the limitations period "of any single act contributing to the hostile work environment."  *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009) (citing 42 U.S.C. § 2000e–5(e)(1), and *Morgan*, 536 U.S. at 117).  As the Supreme Court has explained, "[e]ven if a claim of discrimination based on a single discriminatory act is time barred, that same act could still be used as part of the basis for a hostile-work-environment claim, so long as one other act that was part of that same hostile-work-environment claim occurred within the limitations period."  *Green v. Brennan*, 136 S. Ct. 1769, 1781 n.7 (2016) (citing *Morgan*, 536 U.S. at 117) ("It is precisely because the

---

*Lamanna v. Dayton Police Dept.*, 788 F. App'x 1003, 1008–09 (6th Cir. 2019) (citing *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009)) ("To establish a prima facie case against an employer for creating a hostile work environment, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome racial or gender harassment; (3) the harassment was based the employee's protected status . . . ; (4) the harassment unreasonably interfered with work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable.").

entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations . . . ."). Even though most of the episodes of harassment seem to have occurred outside of the one-year limitations period, the Amended Complaint makes a number of allegations that did occur within the statute of limitations: Adams discovered a document bearing a racial epithet in his workspace on June 13, 2018; Adams brought it to the attention of Superintendent Lofton; Mayor McGuire got involved in the aftermath of the discovery and the ensuing publicity over the document; and Richards cautioned a group of county employees about showing support for Adams. Each of these facts suggests personal involvement of the individual Defendants. *Bey v. Falk*, 946 F.3d 304, 315 (6th Cir. 2019) (quoting *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) and holding that a § 1983 plaintiff must show that a defendant was personally involved in unlawful conduct in order to hold the defendant individually liable). Perhaps most important, the Court cannot conclude from the face of the pleadings that Adams' hostile work environment claims against Defendants are time barred. Therefore, Defendants' Rule 12 Motions are **DENIED** as to Adams' § 1983 equal protection claim for hostile work environment.

## II.     42 U.S.C. § 1981

The Amended Complaint (Counts IV and V) also seems to allege that all of the Defendants, including individual Defendants Richards, Lofton, and McGuire, violated Adams' rights under 42 U.S.C. § 1981. Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Amini v. Oberlin*

14

*College*, 440 F.3d 350, 358 (6th Cir. 2006) (other citations omitted). Like Title VII, "§ 1981 prohibit[s] discrimination in the employment context and provide[s] a private right of action against violations of the prohibition." *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 829–30 (6th Cir. 2019) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975)).

The § 1981 counts refer to "Defendants" collectively and do not specify which Defendants Adams would hold liable for the violations of his rights. *See* Am Compl. ¶ 56 ("The Defendants undertook, instead, to turn that contract into an employment situation wherein the Plaintiff was subjected to a racially hostile and toxic work environment . . . ."); ¶ 57 ("Defendants subjected Plaintiff to continuous racial discrimination and harassment throughout his employment as set out above."); ¶ 64 ("After Plaintiff reported the discovery of the 'N***** Owner's Manual,' which constituted a violation of 42 U.S.C. §1981, Defendants retaliated against Plaintiff in his employment."); ¶ 65 ("Defendants were acting under color of state law in their retaliatory conduct . . . ."). In any event, no Defendant has argued the timeliness of Adams' race discrimination and retaliation claims in violation of 42 U.S.C. § 1981 or which statute of limitations would apply. *Barrett*, 556 F.3d at 511 (holding that an employee's § 1981 hostile work environment claim was timely under 28 U.S.C. § 1658(a)'s four-year statute of limitations). Therefore, the Court does not reach the issue of whether the Amended Complaint states a timely § 1981 claim.

### III.    Title VII of the Civil Rights Act of 1964

The Court would also note that Obion County mentions the 300-day administrative exhaustion deadline for Title VII claims. The Amended Complaint (Counts I and II) alleges that Obion County is liable for violations of Title VII based on acts of race discrimination and retaliation. Defendants' Title VII argument is limited to a short footnote in its brief where

Defendants contend that only "colorable claims concerning discrete acts of harassment or discrimination" which "occurred on or after October 10, 2017" would be timely. Defs.' Mot. for J. on the Pleadings 6 n.2 (ECF No. 38-1).

Defendants' point actually goes to the timely exhaustion of Adams' administrative remedies for any Title VII claim. Generally speaking, a Title VII plaintiff cannot allege claims in a lawsuit that were not first raised in a timely EEOC charge. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 627 (6th Cir. 2013) (*Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)). The failure to timely exhaust administrative remedies is an appropriate basis for the dismissal of a discrimination claim. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). In this case, however, it is not clear to the Court that Adams is even attempting to bring judicial claims under Title VII for any conduct that he did already not raise in a timely administrative charge. Adams has attached copies of his EEOC administrative charge of discrimination and a right-to-sue letter issued by the EEOC as exhibits to his Amended Complaint.[5] The charge alleges that Obion County's violations were continuing from 2011 to 2018 and then refers to episodes from the course of Adams' tenure, culminating in his discovery of the offensive document in his workspace in 2018. As the Court has already noted, these allegations are part and parcel of a hostile work environment theory of discrimination, and not discrete acts of disparate treatment. The Court declines to reach the Title VII issue at the pleadings stage based

---

[5] In assessing the sufficiency of the pleadings, it is proper for the Court to take into account any exhibits attached to the pleadings, exhibits included with the motion to dismiss (as long as the pleadings refer to the exhibits and the exhibits are central to the plaintiff's claims), and public records of which the Court can take judicial notice. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). EEOC charges and related documents like right-to-sue letters qualify as public records. *Rhea v. Dollar Tree Stores, Inc.*, 395 F. Supp. 2d 696, 703 (W.D. Tenn. 2005) (McCalla, C.J.).

on nothing more than Defendants' cursory argument about the statute of limitations. In the final analysis, the Court does not have sufficient information or argument from the parties to reach the administrative exhaustion issue. Insofar as Obion County seeks the dismissal of the Title VII claims, the Court will deny the request without prejudice to the County's right to raise the issue in a subsequently filed motion.

## CONCLUSION

Defendants Lofton, Richards, and McGuire are entitled to the dismissal of any claim against them in their official capacity, which is actually a claim against Obion County itself. Defendants are also entitled to the dismissal of the punitive damages claim against Obion County and the claims against the John Doe Defendant. However, at the pleadings stage, it is not clear from the face of the Amended Complaint that Adams' § 1983 claim for hostile work environment or Title VII claims are untimely. Therefore, Defendants' Rule 12 Motions are **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:   June 5, 2020.